**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| KALIMAH A. AZEEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:24-cv-02434-TLP-cgc |
| v. | ) | |
| | ) | JURY DEMAND |
| COCAINE AND ALCOHOL AWARENESS | ) | |
| PROGRAM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kalimah A. Azeez sued her former employer, Cocaine and Alcohol Awareness

Program, Inc. ("CAAP"), for employment-related discrimination and retaliation under federal

and Tennessee state law.  (ECF No. 10 at PageID 35–38.)  CAAP now moves for summary

judgment.  (ECF No. 66.)  Plaintiff responded (ECF No. 69), and CAAP replied (ECF No. 73.)

For the reasons below, the Court **GRANTS** CAAP's Motion for Summary Judgment.

**BACKGROUND**

The Court begins with the facts and notes where disputes occur.[1]  It then outlines the

relevant procedural history.

---

[1] The Court takes the facts from Plaintiff's Response to Defendant's Statement of Facts (ECF No. 69-1) and Defendant's Responses to Plaintiff's Statement of Additional Disputed and Material Facts (ECF No. 73-1).  CAAP notes in several places that facts are undisputed "for purposes of summary judgment only."  (*See id.* at PageID 698.)

I.      **Factual Background**

CAAP is a nonprofit organization in Memphis, Tennessee, that provides cocaine and alcohol prevention services.  (ECF No. 10 at PageID 34.)  It hired Plaintiff around July 12, 2022, as the project coordinator for one its programs called Criminal Court Services Intervention ("CCSI").  (ECF No. 69-1 at PageID 576.)

About six months later in January 2023, Plaintiff told CAAP that she was pregnant. (ECF No. 69-1 at PageID 576.)  She met with CAAP's human resources director at the time, Dayne Webster, to discuss the company's maternity leave policy.  (*Id.*)  Ms. Webster told her that CAAP permits employees to take unpaid maternity leave as allowed by the Family Medical Leave Act ("FMLA").  (*Id.* at PageID 577.)  Plaintiff then met with CAAP's compliance manager, Rosie Crawford, "to develop a plan for how her work would be handled while she was on leave."  (*Id.*)  Plaintiff then created a plan that provided "points of contact" for others to reach while she was away.  (*Id.*)  The plan also explained that Plaintiff's leave would run from May 20, 2023, to July 3, 2023.  (*Id.*)  After July 3rd, Plaintiff expected to work remotely "for the first few weeks and come into the office one day a week."  (*Id.*)

Plaintiff's maternity leave began on May 30, 2023.  (*Id.*)  CAAP paid her during "maternity leave from her accrued paid time off and sick leave time."  (*Id.* at PageID 578.)  She returned to work remotely on July 3, 2023.  (*Id.* at PageID 577.)  CAAP permitted Plaintiff to work remotely for the next four work weeks—July 3, 2023, to July 28, 2023—and paid her at her full salaried rate.  (*Id.*)

On August 4, 2023, CAAP's chief executive officer, Albert Richardson, his executive assistant, and Ms. Crawford met with Plaintiff.  (*Id.*)  They discussed the CCSI program's performance, "CAAP's general prohibition on remote work, Plaintiff's need to return to the

office, and CAAP's ability to accommodate Plaintiff's need for a private space to express breast milk, among other topics." (*Id.*) Despite its "general prohibition on remote work," CAAP's management had approved other employees to work remotely. (ECF No. 73-1 at PageID 698.) What is more, CAAP did not have a written policy that generally prohibited remote work. (*Id.*)

Plaintiff explained to Mr. Richardson at that time that she could not return to in-person work. (ECF No. 69-1 at PageID 578.) Although she did not state this at the meeting, Plaintiff "later" explained that she failed to return to work because she was "dealing with postpartum depression and did not have long-term childcare arranged." (*Id.*) Ms. Webster was unaware Plaintiff received treatment for postpartum depression during her employment with CAAP. (*Id.* at PageID 579.) Neither did Erika Watson, who was CAAP's "second human resources director during Plaintiff's employment." (*Id.*)

Following the meeting, Plaintiff took another round of leave from August 6, 2023, to October 2, 2023. (*Id.*) According to CAAP, Plaintiff "was on maternity leave" during this time. (*Id.*) CAAP adds that Plaintiff applied for unemployment benefits during this leave even though "she understood that she was still employed." (*Id.*) Plaintiff tries to dispute this. (*Id.*) But she testified during discovery that she had applied for unemployment benefits while on maternity leave. (ECF No. 66-4 at PageID 396.) And her Qualifying Separation Determination letter from the Tennessee Department of Labor ("TDOL") and Workforce Development states that CAAP "separated" her "due to a lack of work" on July 28, 2023. (ECF No. 69-6 at PageID 617.) TDOL approved Plaintiff's unemployment benefits and made them effective August 20, 2023. (*Id.*)

That said, Ms. Watson emailed Plaintiff at the beginning of September, to "confirm the date she was planning on returning to work." (ECF No. 69-1 at PageID 579.) Plaintiff filed a

3

discrimination charge with the United States Equal Employment Opportunity Commission

("EEOC") the next week. (*Id.*)

Plaintiff emailed the CCSI staff members, Ms. Crawford, Mr. Richardson, and others at

the beginning of October to let them know that she was returning from leave. (*Id.* at PageID

580.) Mr. Richardson replied two days later, explaining that CCSI employees "were to continue

to report to Greta Webber." (*Id.*) Plaintiff claims that reporting to Ms. Webber meant that she

was "demoted and suffered an adverse employment decision." (ECF No. 73-1 at PageID 700.)

She tried to meet with Mr. Richardson at CAAP's office over the next few days but did not do so.

(ECF No. 69-1 at PageID 580.)

Plaintiff then met Ms. Watson on October 10, 2023, and asked for paperwork to obtain

FMLA leave. (*Id.*) Although Ms. Watson "testified that Plaintiff was not qualified for FMLA

leave since she had not met the requirement of 1250 hours worked," she "never advised Plaintiff

that she did not qualify for FMLA." (ECF No. 73-1 at PageID 698.) Ms. Watson gave Plaintiff

the paperwork. (*See id.*) But Plaintiff never returned the papers because "she learned the CCSI

program was ending." (ECF No. 69-1 at PageID 580.) The last day Plaintiff went to CAAP's

office was October 10, 2023. (*Id.*)

Plaintiff emailed Mr. Richardson, Ms. Watson, Ms. Crawford, and others nine days later.

(*Id.*) She "explained her belief that she had already returned from her leave" and "expressed her

confusion on what her job responsibilities were and who her supervisor was." (*Id.* at PageID

580–81.) Ms. Watson responded that same day and "clarified that [Plaintiff] was still the

program coordinator for the CCSI program."[2] (*Id.*)

---

[2] Plaintiff disputes this and claims she was "demoted." (*Id.*)

CAAP claims that Plaintiff did not perform any work from October 19, 2023, to October 27, 2023, despite knowing that she was still CAAP's employee. (*Id.*)  In fact, CAAP claims that Plaintiff began working for a different company during this time. (*Id.*)  Plaintiff disputes this. (*Id.*)

Mr. Richardson decided to terminate Plaintiff on October 26, 2023, based on her failure to report to work or notify Ms. Webber about her absences. (*Id.* at PageID 582.)  The next day, Ms. Watson sent Plaintiff a letter informing her that CAAP terminated her employment because she failed to follow its attendance and leave policy. (*Id.*)  CAAP asserts that it allowed no other employee to continue working there after "five consecutive unexcused absences." (*Id.* at PageID 582.)  Plaintiff disputes this and argues that it had no such policy in its employee handbook.[3] (*Id.*)  Before CAAP terminated Plaintiff, it informed all CCSI program employees that the program was ending on November 15, 2023, because it lost federal grant money. (*Id.*)  CAAP laid off all CCSI program employees on November 15, 2023. (*Id.*)

---

[3] The parties dispute the employee handbook's contents.  They do not dispute that Plaintiff signed the employee handbook when she was hired on July 12, 2022.  (ECF No. 73-1 at PageID 696; ECF No. 69-3 at PageID 603.)  But they disagree on the Handbook's contents at the time Plaintiff signed it.  The record is unclear on this point.  In her summary judgment response, Plaintiff claims that the Handbook "did not have an attendance and leave policy, a policy for remote work, a pregnancy accommodation policy, or a description of CAAP's maternity leave pursuant to the Family Medical Leave Act ("FMLA") or the Tennessee Parental Leave Act ("TPLA").  (ECF No. 73-1 at PageID 697.)  In support, she submits an exhibit containing various documents that she signed on July 12, 2022.  (ECF No. 69-3.)  But Plaintiff's exhibit does not include a full copy of the handbook that signed.  It just includes her name and the date on a piece of paper that she signed which acknowledges "read[ing] and agree[ing] to abide by th[e] Employee Handbook."  (ECF No. 69-3.)  CAAP's reply— which attaches what it claims to be the entire copy of the "employee handbook that Plaintiff acknowledges receiving" (ECF No. 73-1 at PageID 697)—does little to provide any more clarity.  Their version of handbook is dated March 2019, which is about three years before it hired Plaintiff, and does not include her signature.  (ECF No. 73-5 at PageID 728, 753.)

5

## II.    Procedural History

The EEOC issued Plaintiff a Right to Sue Letter on March 22, 2024.  (ECF No. 10-2 at

PageID 42.)  She sued here on June 21, 2024.  (ECF No. 1.)  She later filed an Amended

Complaint (ECF No. 7), followed by a Second Amended Complaint ("Complaint") (ECF No.

10).  The Second Amended Complaint asserts four claims against CAAP, alleging:

1.    Gender and pregnancy discrimination in violation of Title VII of the Civil
      Rights Act of 1964 ("Title VII"), *see* 42 U.S.C. § 2000e; the Pregnancy
      Discrimination Act of 1978, *see* 42 U.S.C. § 2000e(k) (amending Title VII);
      the Pregnant Workers Fairness Act ("PWFA"), *see* 42 U.S.C. § 2000gg; the
      Tennessee Human Rights Act, *see* Tenn. Code Ann. § 4-21-101; and the
      Tennessee Disability Act, *see* Tenn. Code Ann. § 8-50-103;

2.    Disability discrimination in violation of the Americans with Disabilities Act
      ("ADA"), *see* 42 U.S.C. § 12101; and Tennessee Disability Act, *see* Tenn.
      Code Ann. § 8-50-103;

3.    Retaliation under the same federal and state statutes; and

4.    Intentional infliction of emotional distress under Tennessee state law.

(ECF No. 10 at PageID 32, 35–38.)  This case has had a few delays since that filing.  (*See, e.g.*,

ECF No. 46 (referring Motion to Compel and Motion to Quash); ECF No. 54 (extending

discovery and dispositive motion deadline).)  But with discovery now closed, CAAP moves for

summary judgment.  (ECF No. 66.)  Plaintiff opposes the Motion (ECF No. 69), and CAAP

replied (ECF No. 73.)  The Court now turns to the legal standard before addressing the parties'

arguments.

## **LEGAL STANDARD**

Under Rule 56, a "court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  A fact is "material" if "proof of that fact would establish or refute

an essential element of the cause of action or defense."  *Bruederle v. Louisville Metro Gov't*, 687

6

F.3d 771, 776 (6th Cir. 2012) (citation omitted).  And a "genuine" dispute over material fact occurs "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted).

It is the moving party's initial burden to show there is no genuine issue of material fact. *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citation omitted).  But if they clear that hurdle, then the burden shifts to the nonmoving party to "set forth specific facts showing a triable issue of material fact." *Id.* (citation omitted).  The Court construes all reasonable inferences in favor of the nonmoving party.  *Patterson v. Kent State Univ.*, 155 F.4th 635, 644 (6th Cir. 2025).  And it does not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Rather, the Court assesses "whether there is a genuine issue for trial." *Id.*; *see id.* ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (citations omitted)).

## ANALYSIS

Plaintiff brings four claims under federal discrimination law and Tennessee's parallel state statutes.  (*See* ECF No. 10.)  CAAP first argues that the Court need not address the merits of these claims because Plaintiff's federal claims are time barred.  (*See* ECF No. 66 at PageID 525.) Even if the Court disagrees, CAAP asserts that it is entitled to summary judgment for each claim. (*See id.* at PageID 529; ECF No. 73 at PageID 686.)  Plaintiff counters that her federal claims are not time barred.  (ECF No. 69 at PageID 564.)  And although she did not plead it in her Second Amended Complaint, Plaintiff's summary judgment response now asserts that CAAP violated her rights under FMLA.  (*Id.* at PageID 565.)  In the end, Plaintiff argues that all her claims

7

should be heard by a jury.  (*Id.* at PageID 574.)  For the reasons below, the Court **GRANTS**

CAAP's Motion for Summary Judgment.

## I.      Plaintiff's Title VII, PWFA, and ADA Claims Are Time Barred

A plaintiff must first exhaust her administrative remedies before suing in federal court

under Title VII,[4] the PWFA, and the ADA.  *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d

724, 732 (6th Cir. 2006) (Title VII); 42 U.S.C. § 2000gg-2(a)(1) (incorporating the remedies and

procedures of Title VII to the PWFA); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299,

309 (6th Cir. 2000) ("procedures from § 2000e-5 apply to ADA claims").  The administrative

process begins by a plaintiff[5] timely filing a discrimination charge with the EEOC or the relevant

state agency.  42 U.S.C. § 2000e-5(e)(1).  If the EEOC chooses not to prosecute that charge, it

will issue the plaintiff a Determination and Notice of Rights Letter, otherwise known as a right-

to-sue letter ("RTS Letter").  *See* 29 C.F.R. § 1601.28(b)(1).

The plaintiff then has ninety days to sue in federal court after receiving that letter.  *Truitt*

*v. Cnty. of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998); *Townsend v. Rockwell Automation, Inc.*, 852

F. App'x 1011, 1014 (6th Cir. 2021) ("After receiving the right-to-sue letter, the plaintiff has

ninety days to file a federal complaint." (citing 42 U.S.C. § 2000e-5(f)(1)); *see* 42 U.S.C. §

2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought

against the respondent named in the charge[.]").

Federal courts strictly enforce the ninety-day statutory limitation.  *Graham-Humphreys v.*

*Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).  It is "not to be

---

[4] Plaintiff also brings a claim under the Pregnancy Discrimination Act, an amendment to Title
VII.  *See* 42 U.S.C. § 2000e(k); *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 274
(1987).
[5] The Court acknowledges that during the administrative process the "plaintiff" referred to here
is a "claimant."

disregarded by courts out of a vague sympathy for particular litigants." *Id.* (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).  Although not jurisdictional, the ninety-day filing requirement "is a mandatory claims-processing rule that must be enforced if properly raised by the employer." *Robinette v. ProMedica Pathology Lab'ys, LLC*, No. 21-3867, 2022 WL 4540192, at *2 (6th Cir. May 9, 2022) (citations omitted).  A plaintiff's failure to sue by this deadline "is an appropriate basis for dismissal." *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) (citations omitted).  Indeed, courts generally "should not extend limitations by even a single day." *Graham-Humphreys*, 209 F.3d at 561 (citation omitted); *see, e.g.*, *Robinette*, 2022 WL 4540192, at *2 (affirming dismissal of a pro se complaint mailed before the ninety-day deadline but not received and filed by the clerk until five days after the deadline expired).

The record here shows that the EEOC issued Plaintiff her RTS Letter on March 22, 2024. (ECF No 10-2 at PageID 42; ECF No. 66-13 at PageID 469.)  It also shows that the EEOC emailed Plaintiff that same day, releasing its "Closure Notice" and informing Plaintiff that "a new document [was] available to download" in her EEOC portal.  (ECF No. 66-13 at PageID 461–63.)  But Plaintiff did not open her portal and view the RTS Letter until the next day, March 23, 2024.  (*Id.*; *see* ECF No. 73-1 at PageID 701.)  She filed this lawsuit on June 21, 2024—ninety days after opening the portal but ninety-one days after receiving the EEOC's email.  (ECF No. 1.)  *See Gray v. Shelby Cnty. Bd. of Educ.*, No. 23-2810, 2024 WL 5515752, at *9 (W.D. Tenn. Dec. 9, 2024) ("Recent cases suggest that the EEOC generally sends right-to-sue letters via email, or at the very least, sends email notice that a right-to-sue letter is posted in the portal." (collecting cases)).

This single day distinction weighs heavily on this case.  CAAP argues that the limitations period began to run on the day the EEOC issued the letter on March 22, 2024.  (ECF No. 73 at

9

PageID 683.)  If CAAP is correct, then Plaintiff's deadline to sue ended ninety days later, June 20, 2024.  Her Complaint would thus be time barred for being filed a day late.  (ECF No. 67 at PageID 527.)  Plaintiff responds that the limitations period did not begin to run until she "opened the portal from the EEOC" on March 23, 2024=.  (ECF No. 69 at PageID 564.)  And if she is correct, then she timely filed her Complaint on the ninetieth day.

So the narrow issue is whether Plaintiff "received" her RTS Letter on March 22, 2024—when the EEOC emailed the notification to her—or on March 23, 2024—when she visited her EEOC portal.

Although neither party mentions it, "[t]he Sixth Circuit has resolved that notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period." *Graham-Humphreys*, 209 F.3d at 557 (footnote and citations omitted).  This five-day presumption is afforded in cases in which the EEOC physically mails the RTS Letter to the plaintiff to provide time for the mail to be delivered to their address.  *See Graham-Humphreys*, 209 F.3d at 557–58 nn. 9–10; *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 326 (6th Cir. 1988) (citing *Cook v. Providence Hosp.,* 820 F.2d 176, 179 n.3 (6th Cir.1987) (stating that there is a presumption that mail is received by the addressee and that the ninety-day time limit begins to run five days after the EEOC mails the notice of right to sue)).

So if the EEOC *physically mailed* the RTS Letter on March 22, 2024, then the Court would presume that it would take the Letter five days to reach Plaintiff.  Meaning, her ninety-day limitations period would not start until five days later.  *Rembisz v. Lew*, 830 F.3d 681, 683 (6th

Cir. 2016) ("The agency in this instance served its right-to-sue notification by first class and certified mail on March 15, 2013, making March 20, 2013, the presumptive date that the limitations period began."). But there is no evidence in the record here that the EEOC physically mailed anything to Plaintiff. The EEOC issued the RTS Letter through the EEOC portal and notified Plaintiff that same day through email. The Court accordingly declines to apply this five-day presumption here. *See, e.g.*, *Gray*, 2024 WL 5515752, at *8 (concluding same).

Moving on. "[R]ecent case law suggests that 'a plaintiff is deemed to have received a right-to-sue letter when that letter is made accessible via the EEOC portal,' not when they open that document." *Id.* at *9 (quoting *Alfredo v. MBM Fabricating Co. Inc.*, No. 23-10526, 2024 WL 1334305, at *4 (E.D. Mich. Mar. 28, 2024)); *see Holloway v. TTEC@Home LLC*, No. 23-10367, 2025 WL 935548, at *3 (E.D. Mich. Mar. 27, 2025) (noting that courts have held that "in the electronic context, the ninety-day clock begins to run when the plaintiff receives the email notifying them of their right to sue" (collecting cases)); *see also Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021) ("We hold that Lax's filing window for purposes of 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1614.407 commenced when he received the email, not when he opened the attachment."); *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1071 (8th Cir. 2024) ("In our view, McDonald received notice of her right to sue . . . when the EEOC first emailed her lawyer the link to her right-to-sue letter in the Public Portal.").

This approach makes sense in our modern era of electronic communication; indeed, the Court has held as much before. *See Hudson v. McDonough*, No. 2:21-CV-02572-TLP-atc, 2024 WL 4481842, at *3 (W.D. Tenn. Sept. 11, 2024), *report and recommendation adopted*, 2024 WL 4326817 (W.D. Tenn. Sept. 26, 2024) (finding that the ninety-day period started to run on the date the plaintiff "received the email with the final agency decision and right-to-sue letter" and

11

concluding that the Complaint was untimely by two days).  And Plaintiff has presented no argument or reason to change course here.

With that in mind, Plaintiff did not sue within her required limitations period.  She has offered no evidence to rebut the presumption that she did not receive the email about the RTS Letter on March 22, 2024, when the EEOC sent her the email and uploaded the document to her portal.  Her "failure to open the link and actually read the document does not toll the commencement of the period, just as it would not if [s]he simply failed to open mail delivered in the traditional manner." *McNaney v. Sampson & Morris Grp., Inc.*, No. 21-1809, 2022 WL 1017388, at *4 (W.D. Pa. Apr. 5, 2022).  The Court finds the reasoning in *McNaney* persuasive here.  The Court therefore holds that Plaintiff's Complaint is untimely, even if by just one day. *See Rembisz*, 830 F.3d at 683 ("[B]ecause Rembisz missed the deadline [by a single day], Secretary Lew is 'entitled to judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(a)).

### A.      Waiver, Estoppel, and Equitable Tolling

This is not to say Plaintiff has no other safety net.  Waiver, estoppel, and equitable tolling may save untimely filings under certain fact patterns. *Truitt*, 148 F.3d at 647.  With that in mind, Plaintiff—in a single paragraph—argues this case "fits squarely within two equitable estoppel or tolling requirements since the EEOC notice was misleading and the Defendant has not been prejudiced since it failed to assert an affirmative defense that the Plaintiff missed her ninety-day filing period in its Answer and waived that defense."[6]  (ECF No. 69 at PageID 565.)  CAAP

---

[6] "Forfeit" is likely the more appropriate term here as CAAP's alleged omission "was closer to the passive non-assertion of a right than the active relinquishment of it." *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 560 n.8 (6th Cir. 2022) (citation omitted); *see also Wallace v. Coffe Cnty, Tenn.*, 852 F. App'x 871, 875 (6th Cir. 2021) ("This decision was erroneous because Coffee County did not raise the statute of limitations defense in its answer and therefore forfeited it."); *but see id.* (citing Rule 8(c)(1)'s waiver provision and stating that it "applies to a statute of limitations defense").  But as noted below, CAAP did enough to assert the

replies that it did assert the time-bar defense in its Answer and that Plaintiff fails to address the

equitable tolling factors.  (ECF No. 73 at PageID 683–84.)  The Court agrees.  Neither doctrine

saves Plaintiff's untimely filing.

### 1.    CAAP Did Not Waive or Forfeit Its Affirmative Defense

"In responding to a pleading, a party must affirmatively state any . . . affirmative defense,

including . . . [the] statute of limitations."  Fed. R. Civ. P. 8(c)(1).  An affirmative defense must

be "set forth 'in short and plain terms.'"  *New Hampshire Ins. Co. v. Marinemax of Ohio, Inc.*,

408 F. Supp. 2d 526, 529 (N.D. Ohio 2006) (quoting Fed. R. Civ. P. 8(b)).  Failure to raise an

affirmative defense generally results in waiver or forfeiture.  *See Wallace v. Coffee Cnty., Tenn.*,

852 F. App'x 871, 875 (6th Cir. 2021); *see also Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744,

751 (6th Cir. 2015) ("Raising [an affirmative] defense after discovery would [] unfairly prejudice

the plaintiff by subjecting him to a defense he did not anticipate having to rebut.").

As other district courts have observed:

> The requirement that affirmative defenses be specifically pleaded is based on
> notions of fair play.  A party should not have to deal with an extraneous issue in a
> lawsuit unless it is specifically brought to his attention.  At the same time,
> hypertechnicality in pleading requirements should be avoided.  Thus, liberal
> pleading rules are equally applicable to the pleading of affirmative defenses.  More
> important, what matters is not whether the magic words "affirmative defense"
> appears in pleadings, but whether the Court and the parties were *aware of the issues
> involved.*

*New Hampshire Ins. Co.*, 408 F. Supp. 2d at 529 (quoting *Baker v. City of Detroit*, 483 F. Supp.

919 (E.D. Mich. 1979)), *aff'd on other grounds sub nom. Bratton v. City of Detroit*, 704 F.2d 878

(6th Cir. 1983*), on reh'g sub nom. Bratton v. City of Detroit, Mich.*, 712 F.2d 222 (6th Cir. 1983).

---

affirmative defense by putting Plaintiff on notice that it was not conceding the timing of events
alleged in the Complaint.

Pulling this all together, "[t]he issue in a challenge to the sufficiency of a pleading is notice." *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009).

To be sure, CAAP's "Defenses to Plaintiff's Complaint" only states that Plaintiff "fails to state a claim or cause of action upon which relief may be granted." (ECF No. 23 at PageID 103.) That, by itself, would not be enough to place Plaintiff on notice that CAAP would later challenge the timeliness of its lawsuit. But there is more than just this general defense in CAAP's Answer.

The Operative Complaint states that the EEOC issued Plaintiff "a right to sue letter on or about March 22, 2024. Plaintiff received the letter thereafter and was notified of her rights on or about March 25, 2024." (ECF No. 10 at PageID 33, ¶ 3 (citing ECF No. 10-2).) CAAP responded that it "lacks sufficient knowledge or information to form a belief as to when Plaintiff received and was notified of her right to sue letter from [EEOC], therefore, these allegations are *denied* and strict proof is demanded if CAAP's rights are to be affected in any manner." (ECF No. 23 at PageID 101, ¶ 3 (emphasis added).) The Complaint next provides that "Plaintiff has complied fully with the prerequisites to jurisdiction in this Court under Title VII." (ECF No. 10 at PageID 33, ¶ 4.) In response, "CAAP denies that Plaintiff has fully complied with prerequisites to jurisdiction in this Court under Title VII."[7] (ECF No. 23 at PageID 101, ¶ 4.)

The Court finds that these "short and plain statements" meet CAAP's burden to provide notice of its position. Indeed, CAAP explicitly pleaded that it "denied" knowing when Plaintiff "received or was notified of her right to sue letter." (ECF No. 23 at PageID 101, ¶ 3.) True, the Answer did not use the "magic words" of "affirmative defense." *Baker*, 483 F. Supp. At 921 ("More important, what matters is not whether the magic words 'affirmative defense' appears in

---

[7] The parties here appear to equate Title VII's filing prerequisites with jurisdiction. That, of course, is not the law. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 5501–551 (2019).

14

pleadings, but whether the Court and the parties were *aware of the issues involved*."). Yet the challenge to Plaintiff's timeliness was not lurking in the shadows. It was in the Answer's third and fourth paragraph. So Plaintiff—who has able counsel—was therefore on notice that CAAP, as stated in its Answer, denied that Plaintiff "complied fully with [Title VII's] prerequisites." (ECF No. 10 at PageID 33, ¶ 4.) The Court thus finds that CAAP did not waive or forfeit this affirmative defense.

### 2.    Plaintiff Is Not Entitled to Equitable Tolling

Federal courts may equitably toll a limitations period in appropriate circumstances. *See Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017). But courts grant this relief "only sparingly." *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (citations omitted). The most common tolling situation is "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Zappone*, 870 F.3d at 556 (quoting *Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014)). But the Sixth Circuit also considers the factors below when deciding whether to equitably toll a limitation period: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Graham-Humphreys*, 209 F.3d at 561 (quoting *Truitt*, 148 F.3d at 648). These factors are not always material—courts assess equitable tolling on a "case-by-case basis." *Id.* A plaintiff "carr[ies] the burden of establishing [her] entitlement to equitable tolling." *Zappone*, 870 F.3d at 556 (first alteration in original) (quoting *Jackson*, 751 F.3d at 718–19).

Plaintiff's response here mentions equitable tolling but does not address these factors. Her argument, although brief, boils down to this: The RTS Letter stated that she had to sue

15

within ninety days of receiving notice and that "[r]eceipt generally occurs on the date that you . . . view this document."  (ECF No. 69 at PageID 564–65; *see also* ECF No. 66-13 at PageID 469.)  And so, according to Plaintiff, she should "not now be penalized for relying on the express, explicit and direct instructions of the RTS notice she received."  (ECF No. at PageID 564.)  She also argues that "if EEOC directives regarding a RTS are misleading, a plaintiff's reliance on those directives will not result in dismissal of the plaintiff's federal claims." (*Id.* (citing *Page v. U.S. Indus.*, 556 F.2d 346, 350 (5th Cir. 1977)).)

The Court is sympathetic to Plaintiff's position.  But as explained below, these arguments do not satisfy her burden.

Start with Plaintiff's citation to *Page.*  In that case, the EEOC sent the plaintiff two letters months apart.  *Page*, 556 F.2d at 350.  The first told her that the EEOC's conciliation efforts had been unsuccessful and that she had "the right to file suit."  *Id.*  The second told her that the EEOC would not bring a "civil action . . . and accordingly is issuing you this Notice of Right to Sue."  *Id.*  The plaintiff sued within ninety days of the second letter but not the first.  *Id.*  So the district court dismissed the claims as untimely, reasoning that the first letter started the ninety-day limitations clock.  *Id.*  The Fifth Circuit disagreed and found that the second letter controlled.  *Id.* at 351.  Even if the first letter had provided adequate notice, the Fifth Circuit reasoned that the letter would have been "patently misleading."  *Id.*  "[E]quitable considerations" would have also permitted the plaintiff "to rely on this seemingly authoritative statement by the agency presumed to know the most about these matters."  *Id.*

Unlike *Page*, this is not a case with conflicting EEOC letters or authoritative administrative statements.  Plaintiff instead seems to object to the RTS Letter's statement that "[r]eceipt *generally* occurs on the date that you . . . view this document."  (*See* ECF No. 66-13 at

16

PageID 469 (emphasis added).)  Such a *general* statement is not "patently misleading" in this context.  So taken alone, Plaintiff's citation to *Page*—even if that case were from this circuit— does not warrant equitable tolling.  The Court therefore turns to the Sixth Circuit's equitable tolling considerations.

It is worth again noting that equitable tolling usually "applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Graham-Humphreys*, 209 F.3d at 560–61 (citation omitted).  To be sure, Plaintiff has offered no proof or argument that she failed to timely file because of circumstances beyond her control.  It appears instead that she or her lawyer simply miscalculated the proper filing date or otherwise waited until the eleventh hour to sue here.  Such inaction does not warrant equitable tolling.  *Id.* at 561; *see Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) ("Generally, 'a lawyer's mistake is not a valid basis for equitable tolling.'" (citations omitted)); *Robinette*, 2022 WL 4540192, at *2 ("As the district court found, Robinette did not assert that some circumstance beyond her control prevented her from complying with the filing deadline, and her mistaken belief that she filed her complaint by mailing it to the court before October 18, 2019, is insufficient to justify equitable tolling." (citations omitted)); *Holland v. Florida*, 560 U.S. 631, 652 (2010) ("We have previously held that 'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (internal citations omitted)).

The only other consideration that Plaintiff appears to raise is that CAAP would not be prejudiced by her untimeliness.  (ECF No. 69 at PageID 565 ("Defendant has not been prejudiced since it failed to assert an affirmative defense that the Plaintiff missed her ninety-day filing period[.]").)  This is unpersuasive for two reasons.  First, CAAP properly contested her

17

compliance with Title VII requirements in its Answer.  Second, and most important, "[t]he absence of prejudice [] cannot serve as an independent basis for equitably tolling a limitations period, especially where, as here, the plaintiffs fail to demonstrate that any other factor supports tolling." *Zappone*, 870 F.3d at 558 (citations omitted).

The result here is a harsh one.  But the statutory timeframe is tight and the caselaw is largely unforgiving.  And Plaintiff's conclusory arguments fail to meet her burden to show equitable tolling applies.  As the Sixth Circuit has explained, "[a]ny more lenient [conclusion] would illicitly license a . . . claimant to indefinitely extend limitations by avoiding acceptance of an RTS notice, thereby circumventing the Congressional mandate that . . . lawsuits should be initiated within ninety days of the EEOC's 'giving' of official authorization to sue." *Graham-Humphreys*, 209 F.3d at 560.  Because Plaintiff's complaint is untimely and no saving doctrines apply, her claims under Title VII, the PWFA, and the ADA are untimely and therefore barred. *Rembisz*, 830 F.3d at 683 (affirming dismissal when the plaintiff filed "his complaint late by one day").

## II.     Family Medical Leave Act

In response to CAAP's Motion for Summary Judgment, Plaintiff argues that CAAP violated her FMLA rights.  (ECF No. 69 at PageID 565.)  *See* 29 U.S.C. § 2601.  CAAP replies that Plaintiff waived this claim because her Second Amended Complaint did not include a claim under the FMLA.  (ECF No. 73 at PageID 685.)  The Court agrees with CAAP for the reasons below.

### A.     Background on Plaintiff's Complaints

Plaintiff amended her original Complaint a week after suing here.  (ECF Nos. 1 ("Original Complaint"), 7 ("First Amended Complaint).)  She filed a Second Amended

Complaint about three months later.  (ECF No. 10.)  As it relates to the FMLA, the first two complaints both asserted: "This action is brought to remedy . . . medical leave violations . . . for activity protected under . . . the Family and Medical Leave Act, 29 U.S.C. 2601 *et seq*."  (ECF No. 1 at PageID 1, ¶ 1; ECF No. 7 at PageID 14, ¶ 1.)  The first two complaints allege five individual counts titled: Gender Discrimination, *Violations of the FMLA*, Violations of the ADA, Retaliation, and Emotional Distress.  (ECF No. 1 at PageID 4–7; ECF No. 7 at PageID 17–20.)  Both Complaints also include facts related to the alleged FMLA violation, such as "Defendant has engaged in unlawful employment practices in violation of the Family and Medical Leave Act.  The unlawful practices included discrimination against Plaintiff on the basis of her pregnancy when Defendant failed to accommodate Plaintiff during the birth and care of her newborn child and failed to maintain Plaintiff's position of employment."  (ECF No. 1 at PageID 5, ¶ 23; ECF No. 7 at PageID 18, ¶ 23.)

But the Second Amended Complaint—which is Plaintiff's operative Complaint[8]—drops the FMLA claim.  Even though it begins "[t]his action is brought to remedy . . . medical leave violations," it drops the FMLA cause of action.  (ECF No. 10 at PageID 32, ¶ 1.)  Plaintiff removes her previous reference to the FMLA statute in that sentence, drops "Violations of the FMLA" as an individual claim, and omits the FMLA-related facts mentioned above.

---

[8] Amended complaints generally supersede earlier pleadings.  *Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) (citations omitted).  That is unless "the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading." *Id.* at 811–12 (citation omitted).  Plaintiff's Second Amended Complaint does not reference or incorporate anything from the former Complaints.  Nor does her response here state that she intended to incorporate her earlier pleadings in her amendment.  Plaintiff thus cannot rely on the FMLA claim she asserted in her earlier two Complaints. *See Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) ("Although Drake pleaded a claim for abuse of process in his original complaint filed in state court, that complaint is a nullity, because an amended complaint supercedes [sic] all prior complaints." (citation omitted)).

B.     **Plaintiff Failed to Bring an FMLA Claim**

A court may grant summary judgment when the non-moving party's pleading fails to state a claim. *See Carter*, 561 F.3d at 565–66. Although the analysis in this posture is like one under Rule 12(b)(6), there are some differences. *Id.* at 567–68 (discussing *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788–89 (6th Cir. 2005)). Rather than applying Rule 12's liberal pleading standard, courts look to the "course of the proceedings" to determine whether the defendant has "notice of the plaintiff's claims" by the close of discovery. *Id.* at 566 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 513 (6th Cir. 2008)). The goal is to prevent a plaintiff from "unfair[ly] surpris[ing]" the defendant at the summary judgment stage. *Tucker*, 407 F.3d at 788 (citation omitted).

So the question here is whether Plaintiff's Second Amended Complaint asserts an FLMA claim even though she omitted the factual allegations supporting that claim (from her earlier complaints) and she removed the reference to the FMLA statute. If it does, then there is no need to belabor the point. But if it does not, then the FMLA claim may still survive if the course of proceedings provided CAAP with notice that Plaintiff intended to pursue this claim.

"Complaints drafted by attorneys are held to a more stringent standard than those drafted by *pro se* litigants." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008) (citation omitted). A complaint is "not required to identify specific *theories of relief*; [it] need only specify a *claim*." *Platt v. Bd. of Commissioners on Grievances & Discipline of Ohio Supreme Ct.*, 894 F.3d 235, 246 (6th Cir. 2018) (emphasis in original) (citations omitted); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory."). Even still, it requires at least a short and plain statement that gives the defendant "*fair notice* of what the plaintiff's claim is and the grounds upon which it

20

rests."  *Id.* (emphasis added) (citation omitted); *see* Fed. R. Civ. P. 8(a)(2); *see also Bassett*, 528 F.3d at 438 ("To hold otherwise encourages sloppy pleading and speculative causes of action.").

Plaintiff argues that she asserts an FMLA claim because her Second Amended Complaint "expressly complains about being forced on a second maternity leave."  (ECF No. 69 at PageID 566.)  In support, she points to the Civil Cover Sheet that cites (1) the FMLA statute, 29 U.S.C. § 2601, and (2) an exhibit that states: "Being put on unpaid 'maternity' leave by CEO Albert Richardson after completing my maternity leave a month earlier and returning back to work is absurd."  (*Id.*; *see* ECF No. 10-1 at PageID 40; ECF No. 10-4 at PageID 47.)

These are skeletal references to the FMLA.  True, the Civil Cover Sheet that Plaintiff filed with her Original Complaint and attached to her Second cites the FMLA statute.  But as already mentioned, the Second Amended Complaint itself removes all references to the FMLA. And remember, Plaintiff voluntarily amended her Complaint to do this.  That she pleaded an FMLA claim in her first two complaints but not the third shows that she intended to drop the claim.  This was not a mere mistake or sloppy omission; rather, it reflects a deliberate choice to waive the claim and provide CAAP notice that it was no longer defending against such a claim.

What is more, the single sentence Plaintiff refers to here, which is found in an exhibit attached to the Second Amended Complaint, cannot be liberally construed as a "short and plain statement" alleging that CAAP violated with her FMLA rights.  She complains there about CAAP's CEO's "absurd" decision to place her on leave.  But that isolated grievance does not articulate any facts about how CAAP allegedly violated the FMLA.  The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory . . . and (2) the 'retaliation' or 'discrimination' theory[.]"  *Hoge v. Honda of*

21

*Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). And the Court finds that this isolated grievance hints at neither theory.

So at worst the Second Amended Complaint does not raise an FMLA claim and at best it is ambiguous. The Court then looks to the course of proceedings. Plaintiff states that she "has met the Rule 8(a) notice standards as (the) majority of all seven (7) depositions and written discovery centered around Plaintiff's pregnancy, maternity leave and the resulting issues after Plaintiff gave birth and attempted to begin work again with the Defendant." (ECF No. 69 at PageID 566.) The Court disagrees for two reasons.

The first reason is technical and the second is substantive. To start, "[i]t is well settled that the non-moving party must cite *specific* portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *Vasser v. SaarGummi Tennessee*, No. 20-5223, 2021 WL 7084365, at *2 (6th Cir. Sept. 15, 2021) (emphasis added) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997)). Plaintiff mentions seven depositions and written discovery but does not cite the record or otherwise support her argument.

"Summary judgment practice requires more" than such a broad reference. *Adams v. Lockheed Martin Energy Sys., Inc.*, 199 F. App'x 405, 409 (6th Cir. 2006) (citation omitted). As lawyers know, courts are not required to blindly sift through records to find evidence that support [a party's] arguments." *Vasser*, 2021 WL 7084365, at *2; *see Adams*, 199 F. App'x at 409 (finding that even if the district court had made an incorrect finding, the Sixth Circuit would "nevertheless affirm" because the plaintiff's briefing offered only "general allegations and cite to entire depositions rather than specific supporting testimony of a deponent"). The Court

22

accordingly declines to parse through the nearly three hundred pages of summary-judgment material to bolster Plaintiff's argument.

Technicalities aside, the Court agrees with CAAP that it "was on notice that Plaintiff *relinquished* her FMLA claims by omitting them from her operative pleading." (ECF No. 73 at PageID 686 (emphasis added).) This is not the usual situation when a plaintiff seeks leave to amend under Rule 15(a) and add a new claim based on information learned in discovery. This case instead aligns with those finding lack of notice because of "an earlier express disavowal of the very claim the party attempted to raise in response to summary judgment." *Carter*, 561 F.3d at 568. By dropping the FMLA claim from her Second Amended Complaint, Plaintiff notified CAAP that she disavowed that claim. And in such event, a plaintiff does not "sufficiently notify a defendant" of a new claim when it has "disavow[ed] its intent to use the argument earlier in the proceedings." *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 435 (6th Cir. 2012) (internal citations omitted).

At bottom, Plaintiff brought an FMLA claim in her first two Complaints but dropped the claim and narrowed the lawsuit to focus on other grievances. *See Kurtz v. McHugh*, 423 F. App'x 572, 579 (6th Cir. 2011) (noting that the plaintiff did similar). With this deliberate omission, she may "not assert or revive these additional claims in response to the defendants' motion for summary judgment." *Id.*

III.   **Supplemental Jurisdiction**

With no federal claims remaining, CAAP argues that the Court should refrain from exercising supplemental jurisdiction over the remaining state-law claims.[9] (ECF No. 67 at

---

[9] The remaining claims are for discrimination and retaliation under the Tennessee Human Rights Act, *see* Tenn. Code Ann. § 4-21-101, and the Tennessee Disability Act, as well as intentional infliction of emotional distress under Tennessee state law. (ECF No. 10 at PageID 32, 35–38.)

PageID 528.)  Plaintiff did not ask the Court to exercise supplemental jurisdiction in her response.  In fact, she did not address this argument.  For the reasons below, the Court declines to exercise supplemental jurisdiction here.

Federal courts have consistently "recognized that [supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) ("Section 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'") (quoting 28 U.S.C. § 1367(a)). And when, as here, no federal claims remain between *two nondiverse parties*, a court "*may* decline to exercise supplemental jurisdiction" over the remaining state claims.  28 U.S.C. § 1367(c)(3) (emphasis added); *see also Stanley v. W. Michigan Univ.*, 105 F.4th 856, 866 (6th Cir. 2024) ("District courts do not have to exercise supplemental jurisdiction, and they may decline to do so if, as relevant here, 'the district court has dismissed all claims over which it has original jurisdiction[.]'" (quoting 28 U.S.C. § 1367(c)(3)).

This broad discretion comes with limits.  Before deciding whether to retain jurisdiction, a district court must first consider whether the "values of judicial economy, convenience, fairness, and comity" warrant doing so.  *Gamel*, 625 F.3d at 952 (citations omitted).  Even still, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]"  *Id.* (citations omitted); *see Lyndon's LLC v. City of Detroit, Michigan*, No. 23-1895, 2024 WL 3427176, at *3 (6th Cir. July 16, 2024) ("Both federal statutory provisions and our precedent not only permit but encourage district courts to decline to

24

exercise supplemental jurisdiction over state law claims that are left without an anchor when their associated federal claims are dismissed." (citations omitted)).

The Court finds that no compelling considerations warrant straying from this general practice. *See Fullen v. City of Columbus*, 514 F. App'x 601, 610 (6th Cir. 2013) (finding no abuse of discretion in discrimination case when "[a]fter summary judgment, only a state-law tort action remained, and while discovery had been completed, the parties had not engaged in pretrial filings or participated in any trial-focused pretrial conferences"); *see also White v. N. Michigan Reg'l Hosp.,* 659 F. Supp. 2d 858 (W.D. Mich. 2009), *amended on other grounds.*, 698 F. Supp. 2d 950 (W.D. Mich. 2010) (dismissing Title VII claim without prejudice at summary judgment for failure to exhaust administrative remedies, and declin[ing] supplemental jurisdiction over the [related] state-law claims").

Start with justice and comity. These interests are best served by deferring to Tennessee's courts, which are best equipped to apply their own laws governing work-place discrimination between two parties that reside in the State. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). This conclusion remains the same even though the Court recognizes that Plaintiff's state-law claims largely borrow analysis from their federal counterparts. *See Marpaka v. Hefner*, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008).

Convenience and fairness do not require a different result. Plaintiff has given no reason why these factors would weigh in her favor. As mentioned, she has not asked the Court to retain jurisdiction over her pendant state claims. Further, dismissing these claims does not mean Plaintiff loses them or must start from scratch in her discovery efforts. It just means that she

25

must pursue her state-law claims in state court.[10]  *Artis v. D.C.*, 583 U.S. 71, 76 (2018); *see* 28

U.S.C. § 1367(d) (providing thirty-day tolling period to refile in state court).  The Court

therefore exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines to retain

supplemental jurisdiction over Plaintiff's remaining state-law claims.

**CONCLUSION**

Courts like to resolve lawsuits on their merits.  But sometimes that does not happen, and

a case will be dismissed on technical or procedural grounds.  Such is the case here.  For the

reasons above, the Court **GRANTS** CAAP's Motion for Summary Judgment, **DISMISSES**

**WITH PREJUDICE** Plaintiff's Title VII, Pregnant Worker's Fairness Act, and Americans with

Disabilities Act claims, and **DISMISSES WITHOUT PREJUDICE** Plaintiff's remaining state-

law claims.

**SO ORDERED**, this 3rd day of August, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[10] CAAP acknowledges that "Plaintiff will be allowed to pursue her claims in state court using the discovery conducted in this matter."  (ECF No. 67 at PageID 528.)